EMMET, State Superintendent of Insurance, v. CITY OF NEW YORK et al.
(No. 6014.)

(Supreme Court, Appellate Division, First Department.   July 10, 1914.)

1. CORPORATIONS (§ 445*)—SALE OF CORPORATE PROPERTY.
    Where the directors of a corporation which owned corporate stock of
    the city of New York authorized the vice president and a director to sell
    such stock, and the vice president and director sold it to another corpora-
    tion receiving the price and executing an agreement reciting the sale,
    and assignment of the stock which was thereupon transferred by the city
    of New York upon its books, there was a sale which passed the legal ti-
    tle to the stock to the second corporation, notwithstanding the director
    and vice president misappropriated the proceeds.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1784;  Dec.
    Dig. § 445.*]

2. TROVER AND CONVERSION (§ 7*)—WHAT CONSTITUTES.
    Where a corporation authorized its vice president and a director to sell
    corporate stock of the city of New York which it owned, and the stock
    was sold to a traction company, which deposited it with the city of New
    York, which took it in good faith as security for the performance of its
    contract, the retention by the city of such stock did not constitute a con-
    version;  there having been no attempt to rescind the sale and return the
    consideration.
    [Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§
    51–57;  Dec. Dig. § 7.*]

    Scott and Dowling, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by William T. Emmet, as Superintendent of Insurance of
the State of New York, against the City of New York and William
Prendergast, as Comptroller.  From a judgment for defendants, plain-
tiff appeals.  Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT,
DOWLING, and HOTCHKISS, JJ.

George M. Mackellar, of New York City, for appellant.
E. Crosby Kindleberger, of New York City, for respondents.

INGRAHAM, P. J.  The Title & Guaranty Company was a domes-
tic corporation organized under chapter 538 of the Laws of 1885 for
the purpose of examining titles to real estate and guaranteeing such
titles and issuing and guaranteeing bonds and mortgages on real estate.
It was prior to the 1st day of April, 1910, the owner of certain corpo-
rate stock of the city of New York for $47,000, and this action was
brought by the plaintiff as Superintendent of Insurance against the city
of New York and the defendant Prendergast as the comptroller of
the said city to recover for the conversion of such stock.  The com-
plaint alleges that plaintiff as such superintendent was duly authorized
and directed to liquidate the business of the said Title & Guaranty
Company in pursuance of section 63 of the Insurance Law, and became
vested with all the property of said corporation;  that on April 1, 1910,
the trust company was the owner of said stock;  and that on said day
the defendants unlawfully converted and disposed of said corporate

stock and the certificate thereof to their own use, to the damage of the said corporation in the sum of $60,000. The action was tried by the court without a jury, who filed a decision directing judgment for the defendants, upon which judgment was entered, and from which the plaintiff appeals.

The court found: That on and prior to the 1st day of April, 1910, the Title & Guaranty Company was the owner and entitled to the possession of the corporate stock of the city of New York for the sum of $47,000, registered in the name of the company, transferrable by the holder in person or by attorney upon the surrender of said certificate. That the said certificate was a promise to pay money to the Title & Guaranty Company or its assigns. That on March 31, 1908, the directors of the Title & Guaranty Company duly passed a resolution that "Benjamin B. Chase, vice president, or Anthony Stumpf, director, be and either of them is hereby authorized to sell, assign and transfer all or any part of the forty-seven thousand dollars ($47,000) three and one-half per cent. corporate stock of the city of New York, N. Y., due November 1, 1940, certificate No. 249, standing in the name of the Title & Guaranty Company of Rochester, N. Y., on the books of the comptroller of the city of New York, and to appoint one or more attorneys for that purpose." That on the 1st day of April, 1910, certain persons, purporting to represent the South Shore Traction Company and the Title & Guaranty Company, presented to the chief stock and bond clerk in the finance department of the city of New York this certificate of stock for $47,000, No. 249, together with an irrevocable stock power to transfer the certificate, with an assignment of said certificate in blank, signed the Title & Guaranty Company, by Anthony Stumpf, vice president, and C. W. Day, treasurer, and under the seal of the company, duly acknowledged before a notary, and with a certified copy of the resolution of the directors of the company, and requested said clerk to transfer on the books of the finance department of the city of New York said certificate of corporate stock, No. 249, from the name of the Title & Guaranty Company of Rochester, N. Y., to that of the comptroller of the city of New York. That the said clerk of the finance department, concluding that the papers were regular, transferred on the books of the finance department the said certificate of stock to the comptroller of the city of New York, in trust for the South Shore Traction Company, as security for its compliance with a certain resolution of the board of estimate and apportionment, canceled the said certificate, No. 249, and issued two new certificates, one for $33,750, and one for $13,250, in the name of the comptroller of the city of New York, which are now held as security for compliance by the South Shore Traction Company with the provisions of its franchise which had been granted to it, and the sum of $50,000 which had been deposited with the comptroller was paid to said South Shore Traction Company. That on the same day, April 1, 1910, the market value of the said certificate was $41,830, and on the said day a check for that sum was drawn by the said South Shore Traction Company to the order of the Title & Guaranty Company, which was duly deposited to the credit of the Title & Guaranty Company and was duly

paid, so that the Title & Guaranty Company received the value of the stock. That said transfer of the certificate of corporate stock was complete and regular on its face, and was accepted by the officials of the finance department in good faith, without notice of any infirmity in the instrument or defect in the title of the person presenting it.

[1, 2] I think upon those facts that there was a sale of this stock by the Title & Guaranty Company to the South Shore Traction Company. The directors of the title company had, by a formal vote, authorized its vice president or one of its directors to sell, assign, and transfer the stock. The directors by an instrument in writing had, "for value received, bargained, sold, assigned and transferred" the stock, and that assignment was presented to the finance department with a request to cancel the certificate and issue a new certificate for the benefit of the South Shore Traction Company. That request was complied with, and the city then paid to the traction company $50,000, which had been deposited with it, and received this stock in lieu of the deposit, and the South Shore Traction Company then paid to the title company the value of the stock. The transaction was then complete. The stock had been transferred by an officer of the title company who had authority to sell and transfer it. The value of the stock had .been paid by the traction company and received by the title company. It may be that the title company could have rescinded the transfer as made in bad faith, but, as to third parties dealing with the stock based upon the legal title to the certificate, I cannot see why this transaction did not pass the title. If on these papers presented to the finance department it had issued a new certificate to the South Shore Traction Company, and it had sold the certificate to a third party in good faith without notice, certainly such purchaser would not be guilty of a conversion, and I do not see that the defendants were guilty of a conversion for accepting the transfer and treating the certificate as the property of the South Shore Traction Company. It in good faith paid to the South Shore Traction Company the $50,000 which it held as security for its compliance with its obligation, and I think it elected to hold the stock. The action is at law for a conversion. To entitle the plaintiff to recover on its complaint, the defendant must have converted the stock to its own use. All it did was to receive the certificate, comply with the request of the responsible officers of the title company to transfer the stock to the comptroller to hold for the benefit of the traction company, and it still holds the stock as so requested. There was no demand on the comptroller by the title company to return the stock, and unless the original receipt of the stock was a conversion, which it is clear to me that it was not, then the plaintiff could not recover in this action.

Nor do I see how, under the circumstances, the city could be liable for a conversion of the stock. It has done nothing with the stock. The city has neither disposed of the stock, nor has it received any benefit from it. The comptroller claims to hold the stock as security for the performance by the traction company of the obligation which it assumed when it received its franchise. If the comptroller is not entitled to hold the stock for that purpose, the title company or the plain-

tiff as its liquidator will be entitled to recover the stock which it deposited with the comptroller; but, on the facts as developed on the trial, the plaintiff failed to prove a conversion. I can find no evidence that the title company or the plaintiff ever elected to rescind the sale, ever offered to return the money that it received as the value of the stock, or sought to recover back from the traction company the stock that it delivered, and the traction company is not a party to this action. The fact that the officers of the title company misappropriated the amount that it received for the stock cannot make the defendants liable. Whether this results from a valid transfer of the certificate of stock by the title company to the traction company or by way of estoppel is not material. Certainly both the title company and the plaintiff, seeking to enforce its rights, are estopped from holding the city of New York liable for the default of its officers duly authorized to act for it.

I think therefore that the plaintiff was not entitled to recover, and that the judgment should be affirmed, with costs.

McLAUGHLIN and HOTCHKISS, JJ., concur. SCOTT and DOWLING, JJ., dissent.